IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-00059-RBJ-CBS

DALLAS BELT,

      Plaintiff,

v.

UNITED AIRLINES, INC., a subsidiary of United Continental Holdings, Inc.,

      Defendant.

---

## ORDER

---

The case is before the Court on the defendant's motion for summary judgment [docket #32].  It has been fully briefed and was argued orally by counsel on December 7, 2012.

**Facts**

This is an age discrimination case, brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621-634.  Plaintiff Dallas Belt spent his career of nearly 40 years in the airline industry.  He worked for the defendant, United Airlines, for the last 12 of those years, essentially from 1998 into the beginning of 2011.  At United he served as a Regional Manager of Airport Affairs in the Corporate Real Estate department at the Denver International Airport.  He is credited by the individual who was his supervisor for much of his tenure at United, Chip Sandifer, as being a solid and satisfactory performer.

In May 2010 United and Continental Airlines (one of the airlines for whom Mr. Belt had worked previously) announced a merger, and they began a process of eliminating duplication and reducing staff numbers in the combined airlines' operations.  As is particularly relevant to this case, they announced that they would be filling 12 positions in the Corporate Real Estate

department, five as "Directors" and seven as "Regional Managers." The Director position was commensurate with the position that Mr. Belt held. The Regional Manager positions were somewhat lower level positions.

Mr. Belt, then age 67, applied for both a Director and a Regional Manager position. In all, 57 individuals submitted applications for the 12 positions, most if not all of whom were employees of United or Continental. Interviews were conducted in January and February 2011 by Nathan Lopp (age 34), a Managing Director of Corporate Real Estate for United who had replaced Mr. Sandifer as Mr. Belt's supervisor in May 2010; Gavin Malloy (age 32), another Managing Director of Corporate Real Estate for United; and Karen Rodarmel (age 47), a Human Resources Manager who came over from Continental. The final hiring decisions were primarily made by Mr. Lopp, Mr. Malloy and Kate Gebo (age 42), who was the Vice President of Corporate Estate, to whom Mr. Lopp reported. However, input was also provided by Ms. Rodarmel and, to a lesser extent, by Pete McDonald (age 61) who was Ms. Gebo's supervisor.

Four of the first 12 applicants who were initially offered positions declined the offer, and they were replaced by four others. Accordingly, 16 applicants were offered positions. Forty-one applicants, including Mr. Belt, were not offered a position. The Director positions were filled by individuals whose ages were 33, 37, 40, 47 and 51. The Regional Manager positions were filled by individuals whose ages were 31, 34, 34, 35, 38, 58 and 62. Mr. Belt believes that he was equally or better qualified than some of the successful applicants, but that he was passed over because of his age. He expressed interest in "any available employment" within United, but he was not offered any position. It is not, however, clear that he was qualified for any available position other than the 12 positions for which he had applied, and in any event, plaintiff's claims focus on his not having received one of the 12 positions in the Corporate Real Estate department.

In April 2011 Mr. Belt "retired," although his retirement was forced because there was no job

available to him.  After he exhausted his administrative remedies at the Equal Employment

Opportunity Commission he filed this suit.

**Standard**

A motion for summary judgment may be granted only if the plaintiff cannot show that

there are any genuine issues of material fact in dispute, and that the defendant is entitled to

judgment as a matter of law.  In considering these issues, the Court must construe the evidence

and inferences that have been put forward by the parties in the light most favorable to the

plaintiff.

**Conclusions**

**A.  Legal Framework**.

Plaintiff has not come forward with any direct evidence of age discrimination, i.e., any

statements, comments, even jokes, that might suggest that any of five individuals who

participated in the decision-making process harbored any age-related bias.[1]  Therefore, the Court

follows the three-step McDonnell Douglas burden-shifting analysis in deciding this motion.  *See*

*Simmons v. Sykes,* 647 F.3d 943, 947 (10th Cir. 2011).  Plaintiff first must establish a prima facie

case by showing that (1) he is a member of the protected class; (2) he applied and was qualified

for the position; (3) he was rejected; and (4) the position was filled by someone substantially

younger.  If a prima facie case is established, then defendant must proffer a legitimate, non-

discriminatory reason for the decision.  Finally, if a non-discriminatory reason is shown, then

---

[1] Plaintiff notes that Ms. Gebo expressed an interest in Mr. Belt's (and others') retirement plans.  It is hardly
surprising that a manager  would wonder whether a 67-year old employee had plans to retire.  Plaintiff also suggests
that the decision makers had age-related stereotypes of Mr. Belt, such as that he was rigid and set in his ways.  I
reviewed the deposition passages that were cited in support of these supposed stereotypes and found that counsel
had attempted, with mixed success, to lead the witnesses into agreeing with these descriptions.  None of this
suggests that the hiring group had age-related biases.

plaintiff must demonstrate the existence of a genuine dispute of material fact as to whether the

proffered reason is a pretext for discrimination.

The protected class in an age discrimination case is persons age 40 and over.  Obviously

Mr. Belt is within that class.  United concedes that he applied, was qualified, but was not

selected for the position.  One could perhaps debate whether persons aged 62 and 58 would be

considered to be substantially younger than Mr. Belt, but it is beyond debate that several of the

successful applicants were substantially younger.  I therefore find that Mr. Belt has met his

burden of establishing a prima facie case.

United must then offer at least one legitimate, nondiscriminatory reason for the decision

not to offer one of the 12 positions to Mr. Belt.  United has offered several reasons, including the

comparative performance ratings of the successful applicants to Mr. Belt, his performance in his

interview, his pursuit of unsuccessful strategies in attempting to negotiate cost concessions from

the Denver International Airport, and his lack of analytical and financial modeling skills in

comparison to the successful applicants.  Although plaintiff questions the bona fides of the

proffered reasons, as discussed below, he does not dispute that United has proffered legitimate,

non-discriminatory reasons for its decisions.

The issue, then, is whether plaintiff has come forward with enough evidence to create a

genuine dispute of material fact as to whether the business reasons proffered were a pretext for

age discrimination.  In that regard the Tenth Circuit very recently summarized the appropriate

test:

> When it comes to showing pretext, the relevant inquiry is whether the evidence
> suggests an employer's stated neutral reasons for a dismissal are "so incoherent,
> weak, inconsistent or contradictory that a rational factfinder could conclude the
> reason[] [is] unworthy of belief."  The question we ask "is not whether the
> employer's proffered reasons were wise, fair or correct, but whether [the
> employer] honestly believed those reasons and acted in good faith upon those

4

beliefs." "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."

*Kaiser v. Colorado Department of Corrections,* No. 12-1128, 2012 WL 6032265, at *1 (10th Cir. Dec. 5, 2012 (citing *Young v. Dillon Cos.,* 468 F.3d 1243, 1250 (10th Cir. 2006) (not selected for publication in the Federal Reporter).

With that test in mind, I turn to the question whether plaintiff has demonstrated that there is a genuine issue of material fact as to whether defendant's position that it hired the most qualified applicants was a pretext.

### B.  Undisputable Facts.

There are certain facts material to this case that have not been disputed and appear to be beyond any genuine dispute.  First, the interviewers had numerical performance review ratings for each applicant for the last two rating years, 2008 and 2009.  No successful applicant had performance review ratings for the last two years that were lower than Mr. Belt.  All but three of the successful applicants had higher scores, and those three had equal ratings to those of Mr. Belt.

Second, was not disputed and appears to be beyond genuine dispute that Mr. Belt's score on his interview was lower than all but one of the 16 individuals.  One person who was offered and accepted a position scored one point lower than Mr. Belt on the interview.  However, her past performance ratings were higher than those of Mr. Belt.

Third, the raw numbers are indisputable.  Three of the five persons who filled the Director positions were in the protected class by reason of their ages, 40, 44 and 46.  Five of the seven individuals who filled Regional Manager positions were in their '30s, but the other two were ages 58 and 62.  The average age of the persons who filled the 12 positions was 42 --

5

substantially younger than Mr. Belt by any measure, but nevertheless within the protected class. Of the 57 total applicants, a higher percentage of those age 40 or over were offered positions (9 of 26, or 35%) than those under 40 (7 of 31, or 23%). The three oldest applicants were Mr. Belt at age 67 and two individuals who were age 62. One of the 62-year old applicants was hired. The other, Mike Mathews, expressed either unwillingness or reluctance to relocate to Chicago, which was a requirement of the position. Mr. Mathews also testified in a deposition that he did not believe he had been discriminated against because of his age.

Comparison of Mr. Belt to other applicants in the protected class is not dispositive. "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out *because of his age.*" *O'Connor v. Consolidate Caterers Corp.,* 517 U.S. 308, 312 (1996). That same case also concludes that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *Id.* Nevertheless, the numbers at the least indicate that United was open to offering and did offer positions to several applicants in the protected class. I note as well that Mr. Belt was himself 55 years of age when he was hired by United.

## C. Disputed Evidence.

Plaintiff argues that there nevertheless is evidence that is genuinely disputed and that tends to show that (1) United's proffered reasons are not credible, and (2) that he was overwhelmingly more qualified than at least three other successful applicants. I will discuss the latter category of disputed evidence first.

1. Was Mr. Belt "Overwhelmingly More Qualified" than Successful Applicants?

6

The "overwhelmingly more qualified" concept derives from *Santana v. City and County of Denver,* 488 F.3d 860 (10th Cir. 2007), and earlier cases cited in that opinion:

> We will draw an inference of pretext where "the facts assure us that the plaintiff is better qualified than the other candidates for the position." We have cautioned that "pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants," but only by demonstrating an "overwhelming" merit disparity. Moreover, we acknowledge that it is not our role to "act as a super personnel department that second guesses employers' business judgments."

*Id.* at 865 (internal citations omitted).

United's posting of the 12 positions indicated that it was "preferred" that an applicant have five years or more of experience in airport affairs, airline work generally, real estate, or negotiating complex contracts. It was also preferred that an applicant have a Master's in Business Administration degree. Mr. Belt had well in excess of five years of experience in each of the preferred experience categories, and he had an MBA. Caitlin Yi (age 31) had only 18 months' of airline experience, and she did not have an MBA. Jeff Kirkham (age 38) and Peter Froehlich (age 40) likewise had fewer than five years' airline experience, although both of them did have MBA degrees.

United counters that while these attributes were "preferred," they were not mandatory job requirements. The decision-makers drew on their past experience with Ms. Yi, Mr. Kirkham and Mr. Froehlich, each of whom was considered to have strong skills in financial analysis and modeling. Ms. Yi had worked with Ms. Gebo and Mr. Mallory who had observed her to have a strong financial background and strong analytical and negotiating skills. Ms. Gebo, for example, testified in her deposition that Ms. Yi had stronger financial and negotiation skills than Mr. Belt. Mr. Kirkham had managed a large portfolio of airports for Continental and was considered by Continental's

7

Vice President of Corporate Real Estate to be a high performer.  Mr. Froehlich had

worked in United's Finance Division and had demonstrated his ability to analyze large

corporate real estate projects, including a large project in which Ms. Gebo and Mr. Lopp

were involved.  Both Mr. Kirkham and Mr. Froehlich had MBA's and, although a

relatively lesser point, both of them speak Spanish, which United regarded as a plus

because of its operations in Latin America.

Significantly, each of these three individuals had better past performance review

ratings than Mr. Belt, and each of them scored better in their interviews.  "Differences in

qualifications among candidates are generally not probative evidence of discrimination

unless one candidate is so clearly better qualified that no reasonable employer would

have made the same hiring decision."  *Cramer v. NEC Corp. of America,* No. 12-10236,

2012 WL 5489395, at *3 (5th Cir. Nov. 13, 2012) (internal quotation marks omitted)(not

selected for official publication in the Federal Reporter).  Even construing the evidence in

the light most favorable to the plaintiff, I cannot find that there is evidence from which a

rational factfinder could find that Mr. Belt was "overwhelmingly more qualified" than

any of the three.

2. Are United's Proffered Reasons for the Hiring Decisions So Lacking in
   Credibility as to Create a Triable Issue of Fact?

Plaintiff argues that the proffered business reasons lack credibility for several

reasons:

- Mr. Lopp testified that he told Mr. Mathews that he would be hired if he

  agreed to relocate to Chicago.  Plaintiff claims that that was a "lie,"

  thereby damaging Mr. Lopp's credibility.  In fact, Mr. Mathews did not

deny that such an offer was made, although he did testify that he did not
recall it.  As earlier noted, he added that he did not believe he was
discriminated against because of his age, 62.

- Mr. Lopp approved United's response to Mr. Belt's EEOC complaint,
which suggested that Mr. Belt's performance during his interview was the
most important factor contributing to the decision not to offer him one of
the positions.  Plaintiff characterizes that as another lie, because a list of
the applicants prepared before the interviews contained the word "no" next
to Mr. Belt's name.  He believes this showed that he was disqualified
before being interviewed.  United states that this was only a preliminary
list and points out that another applicant who also had a "no" on the list
was offered a position based on his strong performance in his interview.

- Mr. Lopp testified that Mr. Sandifer told him that that if cost-containment
was the main criterion, Mr. Belt should not be hired.  Plaintiff claims that
this too was a lie.  However, its evidence for this "lie" is statement in Mr.
Sandifer's affidavit that he did not recall telling Mr. Lopp that his decision
not to select Mr. Belt was for the best [#41-8 at ¶28].[2]

- Defendant states that Mr. Belt's past performance in negotiating rent and
other cost reductions from the Denver International Airport was at best
satisfactory.  Plaintiff offers evidence that he was effective in achieving
costs savings for United.  *E.g.* Sandifer Aff. [#41-8] ¶¶5, 10, 22; Koniz
Aff. [#41-3] ¶6, 8.  United counters that this was not the case in the most

---

[2] The affidavit was never signed by Mr. Sandifer, but Mr. Sandifer expressed his agreement with the affidavit in his deposition.

recent years.  In Mr. Belt's application for a Director or Regional Manager position he described his past accomplishments but listed no cost savings for which he was responsible in 2008 or 2009.  He did list $22 million in costs savings that he obtained in 2010, but while that is not disputed, defendant's evidence is that the hiring group believed that Mr. Belt should not have allowed the item that was eliminated from United's budget to accomplish those savings to have been in the budget in the first place.

- Defendant suggests that one reason that Mr. Belt was not successful in negotiating costs concessions is that he continually relied on an argument that United was entitled under its contract to "most favored nations" status despite the fact that the argument had not been effective.  Plaintiff claims that this argument is not credible, because Mr. Belt's immediate successor, Mr. Froehlich, pursued the same strategy with United's approval. However, Mr. Froehlich testified in his deposition, and no contrary evidence was provided, that he did not in fact make a "most favored nations" argument in his negotiations with DIA.

- Both parties point to the fact that United achieved substantial cost savings in 2012.  Plaintiff suggests that certain concessions made in 2012 regarding unused baggage space were the result of a process that began in earlier years under Mr. Belt.  Defendant counters that the 2012 results were obtained on Mr. Froehlich's watch and resulted from his new approach to negotiations with DIA.  Because what occurred in 2012 obviously post-dated the hiring decisions that have been questioned, it is

essentially irrelevant to the question now before the Court.  Reasonable

minds can perhaps differ on the degree to which Mr. Belt's prior efforts

contributed to successes in 2012, but this does not have any tendency to

show that the hiring group's perceptions of his ineffective strategies and

lack of recent results were a pretext for discrimination.

- A related reason proffered by the defendant was that Mr. Belt's analytical

  and financial modeling skills were not as good as persons to whom

  positions were offered.  Plaintiff notes that in an affidavit that Mr.

  Sandifer did not sign but which he adopted in deposition testimony Mr.

  Sandifer indicated that he believes that Mr. Belt does have those skills.

  United counters that it assessed the financial analysis and modeling skills

  of other applicants more highly.

Construing this evidence in plaintiff's favor, it is fair to say that there are disputes

of fact.  However, those disputes are material only if defendant's reasons were "so

incoherent, weak, inconsistent or contradictory" that rational jurors could conclude that

they were unworthy of belief.  *Kaiser,* 2012 WL 6032265, at *1.

The evidence suggesting that Mr. Lopp is a "liar" is not compelling.  The

conclusion that plaintiff implicitly draws from its attack on Mr. Lopp — that the

individuals who participated in the hiring decisions did not have an honest belief that the

successful applicants were more qualified — does not follow.  While there is conflicting

evidence concerning Mr. Belt's skills and past successes, the undisputed fact remains that

he received only "satisfactory" ratings during his 12 years at United, and that all of the

individuals hired had past performance ratings in the most recent years that were equal to

11

or better than his.  Given that fact, and the absence of any evidence that any successful

applicant was not qualified, I cannot find that the proffered reasons were so inherently

weak that they could rationally be found to be a pretext for decisions that were made on

the basis of Mr. Belt's age.  Mr. Belt does not have to show that age was the only factor

that contributed to the hiring decision, but he does have to show that age was the factor

that made the difference.  *Jones v. Oklahoma City Public Schools,* 617 F.3d 1273 1278

(10th Cir. 2010).

It is unfortunate that a good man who has devoted his career to the airline industry

has it end on such an unhappy note.  However, this Court also has a responsibility not to

put the defendant to the time and expense of trial preparation and a trial if that is not

warranted.  The Court finds that the evidence presented provides no basis on which a

rational jury could find that Mr. Belt's age was a determinative factor in the decision not

to offer him one of the positions.  Therefore, the time for this case to end has arrived.

**Order**

Motion #32 is granted.  The Court enters judgment dismissing this case with

prejudice.  United is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and

D.C.COLO.LCivR 54.1

DATED this 10th day of December, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

12